KING v. SLEPKA.

No. 31039. March 14, 1944.

*146 P. 2d 1002.*

12

Hiatt & Hannigan, of Okmulgee, for plaintiff in error.

Martin L. Frerichs and James C. Wright, both of Okemah, for defendant in error.

WELCH, J. This action was brought by Willie King, by Crittenden Smith, his next friend, to cancel a certain resale tax deed and a subsequent commissioners' deed. Plaintiff tendered the amount of taxes, penalties, and costs. The land here involved was originally owned by Willie King, but had been conveyed to Crittenden Smith, who held same in trust for Willie King.

The trial court upheld the validity of the deeds, and in this appeal the plaintiff urges as error several propositions as hereinafter shown.

It is said that the resale deed to the county is void because the notice of resale did not contain ". . . the name of the owner of said real estate as shown by the last tax rolls in the office of the county treasurer. . . ." As required by 68 O. S. 1941 § 432b.

The facts material to that question are as follows: The resale was held in 1940; the name of the owner of said real estate as shown by the last tax rolls in the office of the county treasurer appears as "Crittenden Smith." In the notice of resale the name of the owner appeared as "Crittenden & Smith."

Plaintiff cites cases to the effect that the above-quoted provisions of the statute are mandatory, and that failure to comply with the terms thereof renders the resale deed issued upon sale thereunder void.

The defendant takes no issue with such rules of law, but urges that the facts here disclose compliance with the statutes under the doctrine of "idem sonans." It seems that we have not heretofore considered the exact question.

Our prior decisions clearly reflect that giving of the notice contemplated by this statute is essential to the power of the treasurer to sell the land. Wilkinson v. Gibbons, 98 Okla. 93, 224 P. 178, and others.

That the notice of sale to be brought to the attention of the property owner must be through the medium therein provided, to wit: The publication of same for the required length of time and for the required number of publications. Welborn v. Whitney, 190 Okla. 630, 126 P. 2d 263, wherein we held that failure to publish as required by statute amounted to a "total omission" to comply with one of the essential statutory requirements.

The obvious purpose of the law being that the contents of the published notice must be sufficient to inform the property owner of intention to sell, our inquiry here is whether this notice is sufficient to accomplish such purpose.

In 1939 the Legislature enacted, as a part of the general law relating to tax resale procedure, the following:

"To defeat the deed . . . it must be clearly plead and clearly proven that one or more of the essential prerequisites to the vesting of authority in said county treasurer to execute such deed was wholly omitted and not done; and a showing that one or more of said prerequisites was irregularly done shall not be sufficient to defeat the deed."

Which appears as a part of section 9, art. 31, ch. 66, S. L. 1939.

Section 453, Title 68 O. S. 1941, prescribing several rules to be followed by the courts in suits involving the validity of tax deeds, provides in part as follows:

". . . The rule that tax proceedings are to be strictly construed as against the tax purchaser, shall not apply to proceedings under this act, but in all courts its provisions shall be liberally construed, to the end that its provisions and all proceedings thereunder shall be sustained."

Such statutory rules of law apply to

resale tax deeds as well as to certificate tax deeds. Johnson v. Bloomer, 191 Okla. 368, 130 P. 2d 298, and Chamberlain v. Davis, 191 Okla. 457, 130 P. 2d 848. It is the plain legislative intent, as expressly declared by the last above-noted statutes, that substantial compliance with the statutes relating to procedure for the enforced sale of real estate for delinquent taxes is all that is required, and that mere irregularities not affecting the substantial rights of the taxpayer and not in clear violation of the public policy as declared by the Legislature will not suffice to invalidate the deed. Swearingen v. McCartan, 186 Okla. 241, 96 P. 2d 1061; Henshaw v. Morris, 189 Okla. 603, 119 P. 2d 85; Reeves v. Caldwell, 179 Okla. 501, 66 P. 2d 75; Davis v. Fariss, 180 Okla. 125, 68 P. 2d 417. In the last-named case we held in the second paragraph of the syllabus as follows:

"A notice of tax resale of lands for delinquent taxes in substantial compliance with the statutory requirements is sufficient to support a resale tax deed otherwise valid."

Plaintiff in error asserts that the rule of "strictissimi juris" prevails in cases of this nature, and that by reason thereof the doctrine of idem sonans has no application in support of a tax deed, citing Tintic Undine Mining Co. v. Ercanbrack, 93 Utah, 561, 74 P. 2d 1184; Henderson v. De Turk, 164 Cal. 296, 128 P. 747. Some of our own opinions are also cited, including Price v. Mahoney, 175 Okla. 355, 53 P. 2d 257, and Welborn v. Whitney, supra. Some of those opinions contain expressions to the effect that the statutes must be strictly followed, but those are cases wherein the court concluded that the error therein presented was such as to amount to a "total omission" to do the thing required by statute.

In view of the above-quoted provisions of our statutes we are not at liberty to embrace the rule of "strictissimi juris" in these matters, but as already shown by the above-cited cases from this court, we must construe the statutes to serve the intention of the Legislature.

In the recent case of Collingsworth v. Hutchinson, 185 Okla. 101, 90 P. 2d 416, we had occasion to consider at some length the doctrine of "idem sonans" and apply the same in the matter of notice or service by publication in a civil action. From our discussion there and from the authorities therein found and those given us in the briefs, we observe that due to the variety of fact situations exact precedent is rarely ever available; that where written or printed notice is involved there must be some substantial similarity to the true name, in the sound as pronounced and as observed by the eye; and that the possibility or probability of mere clerical or typographical errors must be duly taken into account, and that we must consider whether the variation is such that the person to be notified thereby, or his acquaintances, upon reading the published notice would be misled by the variation, giving due consideration to the contents of the whole notice.

The doctrine and rules relative thereto must of necessity be predicated upon the assumption or presumption that the person to be so notified, or his acquaintances, will read the notice.

So the effect of plaintiff in error's position in this regard is to say that "I read the notice and the same contained both the given name and the surname properly spelled and in proper sequence, and though the notice further contained a proper description of the land, I was misled into believing that land belonging to some partnership or corporation was thereby advertised, solely by reason of the fact that there appeared between the two names the printed character '&.'" We fail to find merit in such position in the absence of additional facts.

Further rules seem to be recognized to the effect that the examiner of fact in such matters may, in proper cases, receive extrinsic evidence, not to establish actual notice from a source independent of the published notice, but offered for the purpose of disclosing circumstances bearing on the impression conveyed to the mind of the ordinary person reading the notice. See 45 C. J.

page 389, a part of paragraph 19, as follows:

"An examination of the modern cases may fairly indicate that idem sonans is not really a rule or doctrine, but is little more than evidential fact in determining the identity of a person; and the prima facie presumption of identity arising from the similarity of the names is liable to be shaken by the slightest proof of facts which produce a doubt as to identity."

And to illustrate in this case, had there been evidence herein to the effect that there was in fact a firm operating and owning land in that county under the name of Crittenden & Smith, we would think plaintiff in error might be in better position to urge error of the trial court in the matter of its conclusion on the issue. What we have said applies also, had the published notice been scrutinized by Mr. Smith's acquaintances, as is contemplated by the rule.

The conclusion of the trial court in that regard is supported by this record, and we find no error therein.

Plaintiff in error next contends:

"The resale was void because the notice thereof was not published the week immediately preceding the sale."

We quote further from his brief, as follows:

"The statute (68 O. S. 1941 § 432 b; S. L. 1939, § 3, p. 546; S. L. 1941, § 1, p. 338) requires publication of the notice '. . . once a week for four consecutive weeks preceding such sale. . . .' "

"The notice was published in a weekly newspaper on Thursday, April 11th, 18th, and 25th, and May 2nd, 1940 (C.-M. 96). The sale commenced on the second Monday of May, to wit: May 13th, 1940. The last publication of the notice was on May 2nd, 1940. The notice was not published on Thursday, May 9th, 1940, which was the regular weekly publication day immediately preceding the commencement of the resale. In other words, the notice was not published in the weekly issue immediately preceding the sale — was not continued through every successive issue of the paper up to the commencement of the sale."

In Buhler v. Hysell, 37 Okla. 392, 132 P. 140, this court held in the second paragraph of the syllabus as follows:

"Where land had been sold for delinquent taxes and, for want of other bidders, bid in by the treasurer for the county, and resold after waiting the statutory time, section 6033 of Wilson's Rev. & Ann. St. 1903, which provided that 'the treasurer shall give notice of the sale of such real estate by the publication thereof once a week for four consecutive weeks preceding the sale, . . .' was sufficiently complied with by the publication of the notice for four consecutive weeks, the first publication being April 27, 1907, the last being May 18, 1907, where the resale took place May 27, 1907."

It is thus seen that the same question was therein decided, based upon language of the statute then in force which is identical with the language of the present statute. To the same effect is the decision of this court in Wilson v. Kirkpatrick, 144 Okla. 44, 289 P. 306.

Plaintiff in error's argument is based upon the premise that those decisions are erroneous, and he so contends, but we are not so persuaded. We consider those decisions controlling herein. No error of the trial court appears in that respect.

It is further urged that:

"The resale tax deeds are void on their face because they do not affirmatively recite facts showing the right of the county treasurer to bid off the property in the name of the county.

"S. L. 1939, p. 547, sec. 5, (68 O. S. 1941 § 432 d), authorizes the county treasurer to bid off property in the name of the county only in cases where there are no other bidders. He may not be a competitive bidder. He must wait until all others have failed or refused to bid on the land. The resale tax deed must contain a recital showing the right of the county to purchase at such tax sale, and, unless the deed contains such recital, it is void on its face."

Plaintiff in error cites Thompson v.

Yates, 184 Okla. 86, 85 P. 2d 415, and others of our decisions therein cited in support of his position. Those cases are based upon applicable statutes then in force. Thereunder the statutory form of the deed was intended for use in preparation of certificate tax deeds, and in the instances considered the deeds should have been amended to conform to facts. Therein it was held that the so-called presumptive evidence statute did not apply because the omission there shown was not one of the six facts included in such statute. The Yates decision was promulgated in 1938.

In 1939, however, the Legislature enacted sections 8 and 9, art. 31, ch. 66, S. L. 1939 (68 O. S. 1941 §§ 432g and 432h). Said section 8 thereof provided a form to be substantially followed which is obviously a form for resale deed, and is clearly intended to be used in cases of purchase by the county treasurer. The form of the present deed closely follows that statutory form. That statute does not indicate a requirement that the deed contain any recital such as plaintiff in error says it must contain, nor does the deed before us contain any such recital. Section 9 of the 1939 act, supra, is an enlargement of the so-called presumptive evidence statute as considered in the former opinions.

The 1939 law now provides that among other facts the deed shall be prima facie evidence of the fact "that the property was legally sold at resale to the grantee named in said resale deed, . . ." and "that all proceedings, notices and duties provided, required and imposed by law prerequisite to the vesting of authority in the county treasurer to execute such deed had been followed, given, complied with and performed."

In this case we have had a deed in the form provided by the 1939 statute relating to resale tax deeds. There is no evidence that the county was a competitive bidder or that any other bidder offered a bid in compliance with the statute in that respect. The deed is therefore prima facie evidence that the property was legally sold to the county and that all proceedings were in conformity with law.

We find no error of the trial court in the matter thus urged.

Plaintiff in error also contends that he should have been allowed to redeem under the provisions of sections 433a and 432f, 68 O. S. 1941. He urges that he is of the class of persons under disability within the meaning of such statutes, who may redeem within one year after the removal of such disability. He urges that the finding of the trial court against his claim of incompetency is against the weight of the evidence.

We observe that said section 433a provides that ". . . infants, idiots, and insane persons may redeem. . . ."

Plaintiff in error urges that such statute should be given the same construction as the statutes relating to guardianship which include the term "incompetent" persons as shown in Fish v. Deaver, 71 Okla. 177, 176 P. 251; In re Carney's Guardianship, 110 Okla. 165, 237 P. 111, and other cases relating to guardianship matters.

This is not a proper case for an expression of our opinion as to whether section 433a contemplates or includes incompetent persons as defined and discussed in the cited cases, for if we accept plaintiff in error's position in that regard, we are still unable to agree that the finding of the trial court in the premises is against the weight of the evidence.

The evidence on the point fairly reflects the following:

Plaintiff in error received an allotment of lands as a Creek freedman. He became wealthy as a result of oil production thereon. Crittenden Smith acted as his legal guardian until 1925, when Willie reached his majority, whereupon the guardianship ceased. Willie then retained Mr. Smith as manager of his rather vast properties under written contract and trusteeship. Willie since then spent several years living in Los Angeles, Calif., where he owned a

home. Subsequent thereto he has resided for several years past in Chicago, where he owns a home. He now divides his time between Chicago and Okfuskee county. He has had no legal guardian since becoming of age, and has handled an income of several thousand dollars per annum since 1925 without supervision or control. He has no trade or profession nor any character of regular employment. From the record that may be due to lack of desire to work or lack of necessity therefor, or due to some lack of ability.

He attended school up to approximately the eighth grade. He has made a will and his own witnesses testified that he seemed fully capable of so doing. He has renewed his contracts with Mr. Smith several times and attended to accounting matters with him through a period of some 18 years of such transactions with him, involving many thousands of dollars. He now owns extensive properties, exclusive of the 160 acres of farm lands involved herein, which are managed for him by Mr. Smith under the contracts.

Willie himself appeared and testified generally as to his travels and activity. He is married, but has no children. His testimony here does not establish his legal incompetency.

It is true that a doctor who has attended him testified that Willie was not of average intelligence of one of his age and race, and that in his opinion he would need help in properly attending to his business affairs, and others testified to the same effect, but such testimony falls far short of convincing us that the trial court's finding is against the weight of the evidence as a whole.

We conclude that no error is shown, and the judgment is therefore affirmed.

GIBSON, V.C.J., and RILEY, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. OSBORN, J., concurs in conclusion.