## WOODRING v. MORRIS.
### No. 35372.

Supreme Court of Oklahoma.

Sept. 15, 1953.

Butler & Montgomery and J. Dawson Houk, Fairview, for plaintiff in error.

Harry C. Kirkendall, Enid, and Earl Q. Gray, Ardmore, for defendant in error.

PER CURIAM.

Callie Woodring commenced this action on May 2, 1947, to quiet title to 160 acres of land in Major County, Oklahoma, which included 80 acres described as the west half of northeast quarter of Section 30,

Township 20 North, Range 15 West. Plaintiff deraigned his title to said 80 acres through a resale tax deed issued by C. T. Sheets, County Treasurer of Major County, Oklahoma, to plaintiff, on May 15, 1939. He further alleged that the defendant Morris claimed some right, title or interest in and to said real property adverse to plaintiff. Service of summons was had by publication, and thereafter on July 2, 1947, a default judgment was rendered, adjudging the resale tax deed to be valid as to said 80 acres and quieting title thereto in the plaintiff. On April 15, 1950, the defendant appeared and moved to vacate the judgment. Thereafter, on June 24, 1950, the judgment was "opened" by order of the court and the defendant permitted to file an answer and cross-petition. The answer and cross-petition attacked the validity of the tax deed and the proceedings leading up to the tax sale and then asked that the tax deed be cancelled, declared null and void and that the title of the defendant be quieted as against the plaintiff. Upon trial of the cause, judgment was rendered in favor of the defendant, adjudging the resale tax deed issued to plaintiff, void, and quieting title to the property involved, in the defendant.

Plaintiff has perfected this appeal.

Although several errors are assigned by plaintiff, the only question necessary for us to determine is whether the resale tax deed, issued to plaintiff by the County Treasurer on May 15, 1939, and the proceedings upon which it is based, are valid.

The defendant and cross-petitioner attacked the deed upon the ground that the notice of the sale, published by the County Treasurer prior to the sale, included taxes for the last quarter of the year, which taxes were not delinquent on the date of the first publication of the notice. The notice was as follows:

"Notice of Re-Sale
Real Estate for Taxes

Major County, State of Oklahoma.

"Notice is hereby given that, under authority and direction of Sections 12754, 12755, and 12756, O.S.1931, each of the hereinafter described lots, tracts, and parcels of real estate, all situated in Major County, State of Oklahoma, will be sold at public auction to the highest competitive bidder for cash, provided that for each parcel or tract, other than vacant lots, situated within a city or town, the bidder offers a sum equal to or greater than the full amount of ad valorem and special taxes due and unpaid thereon, together with all interest, penalties and costs accrued and legally due on date of resale; said sale to be held at the office of the County Treasurer in the Court House at the County Seat of Major County, State of Oklahoma, beginning on the Third Monday in April, 1939, between the hours of 9:00 A.M. and 4:00 P.M. and continuing from day to day thereafter between the same hours until said sale has been completed according to law.

"It is hereby stated that none of the following described lots, tracts, and parcels of real estate has been redeemed for the period of two years from the date of sale to the county, and that following each described lot, tract, and parcel of real estate in the schedule below appears, in the order herein set out, the name of the owner as shown by the last tax rolls in the office of the County Treasurer, the date on which said real estate was sold to the county for delinquent taxes, the year or years for which taxes have been assessed (dash indicated first to last year inclusive), now delinquent and unpaid, however the bidder must pay the last quarter of the 1938 tax in addition to the listed price.

"The above notice applies to the following lots, tracts, and parcels, to-wit:

"Witness my hand this 16th day of March, 1939.
    "C. T. Sheets, County Treasurer.

"Description of Lands

Date Sold to County, 11–7–32

" * * * (Descriptions of real estate which is not involved are not copied here, but are omitted from this case made for the sake of brevity) * * *

"W½ NE¼, 30–20–15 M. F. Morris, '30–37 & ¾ '38 ......$132.64."

The above notice was published in the Fairview News on March 17, 1939, March 24, 1939, March 31, 1939 and April 7, 1939. Pursuant to said notice the sale was held on the third Monday in April (April 17) and the property sold to Callie Woodring for $132.64. The County Treasurer's re-sale land list and record of re-sales shows that the land was assessed and sold for delinquent and unpaid taxes for the years 1930–1937 and ¾ths of 1938, said net amount of tax being $112.72, the interest, penalties and costs being $19.92, or a total of $132.64. The same record showed that the land was sold to Callie Woodring, that he paid the Treasurer $132.64 and the further sum of $2.55 for the last quarter of the 1938 taxes, and that a deed was issued to Woodring. The deed shows on its face that the grantee paid the total sum of $135.19 as consideration.

The trial court in its memorandum of facts and conclusions of law found that the notice of resale was in proper form except that it contained the words:

"However, the bidder must pay the last quarter of the 1938 tax in addition to the listed price.",

and that in this regard the notice was defective because it required the payment of taxes not delinquent.

In this, the trial court was in error.

The notice, showing that the property was being sold for delinquent and unpaid taxes for the years 1930–1937 and the first three quarterly installments of 1938, was in compliance with 68 O.S.1941 § 432b (Laws of 1939), to-wit:

"The County Treasurer shall give notice of the resale of such real estate by publication thereof once a week for four consecutive weeks preceding such sale, in some newspaper, having been continuously published one hundred four (104) consecutive weeks with admission to the United States Mails as second class mail matter, with paid circulation and published in the county where delivered to the mails in the county to be designated by the Treasurer; and if there be no paper published in the county, or publication is refused, he shall give notice by written or printed notice posted on the door of the courthouse. Such notice shall contain a description of the real estate to be sold, the name of the owner of said real estate as shown by the last tax rolls in the office of the County Treasurer, the time and place of sale, a statement of the date on which said real estate was sold to the county for delinquent taxes, the year or years for which taxes have been assessed but remain unpaid, and that the same has not been redeemed for the period of two years from the date of sale, the total amount of all delinquent taxes, costs, penalties and interest accrued, due, and unpaid on the same, and that such real estate will be sold to the highest bidder for cash. It shall not be necessary to set forth the amount of taxes, penalties, interest and costs accrued each year separately, but it shall be sufficient to publish the total amount of all due and unpaid taxes, penalties, interest and costs."

Under 68 O.S.1941 § 351, the first installment of the 1938 taxes became delinquent November 1, 1938, the second installment became delinquent January 1, 1939, the third installment became delinquent March 1, 1939, and the fourth installment became delinquent May 1, 1939. 68 O.S.1941 § 432 provided that the 1939 re-sale tax sale should be held on the third Monday in April which was April 17. Since the last quarter did not become delinquent until May 1, and the property was being sold on April 17, it was not improper for the County Treasurer to insert in the notice of sale the words " * * * bidder must pay the last quarter of 1938 taxes in addition to the listed price."

The re-sale tax deed was not issued until May 15, 1939, but under 68 O.S.1941 § 432f, the County Treasurer could have issued the deed at any time within thirty days after it was sold on April 17, and had the deed been issued before May 1, 1939, the purchaser would have had to pay the last quarter of 1938 taxes in addition to the listed price in the notice. Under the same statute the issuance of the deed after

May 1, effected the cancellation and setting aside of all delinquent taxes. Section 432f, supra, reads as follows, to-wit:

"Within thirty (30) days after such resale the County Treasurer shall file in the office of the County Clerk a return, and retain a copy thereof in his office, which shall show each tract or parcel of real estate so sold, the date upon which it was resold, the name of the purchaser and the price paid by him therefor, also a copy of the notice of such resale with an affidavit of its publication or posting, and showing the complete minutes of sale, and that the same was adjourned from day to day until the sale was completed; and such notice and return shall be presumptive evidence of the regularity, legality, and validity of all the official acts leading up to and constituting such resale. Within said thirty (30) days the County Treasurer shall execute, acknowledge and deliver to the purchaser or his assigns, or to the chairman of the Board of County Commissioners where such property has been bid off in the name of the County, a deed conveying the real estate thus resold. The issuance of such deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties and costs previously assessed or existing against said real estate, and of all outstanding individual and county tax sale certificates; and shall vest in the grantee an absolute and perfect title in fee simple to said lands; and twelve (12) months after said deed shall have been filed for record in the County Clerk's office, no action shall be commenced to avoid or set aside said deed; provided that persons under legal disability, shall have one year after removal of such disability within which to redeem said real estate.

"Any number of lots or tracts of land may be included in one deed, for which deed the Treasurer shall collect from the purchaser One Dollar ($1.00) for the first tract and ten (10) cents for each additional tract includ-

ed therein. The Treasurer shall also charge and collect from the purchaser at such sale an amount in addition to the bid placed on such real estate, sufficient to pay all expenses incurred by said county in preparing, listing and advertising the lot or tract purchased by such bidder, which sums shall be credited and paid into the Resale-property Fund hereinafter provided, to be used to defray to that extent the costs of resale.

"When any tract or lot of land sells for more than the taxes, penalties, interest and cost due thereon, the excess shall be held in a separate fund for the prior owner of such land to be withdrawn any time within two years. At the end of two years if such money has not been withdrawn or collected from the County, it shall be credited to the County Sinking Fund."

Under the circumstances present in this case, the payment by the plaintiff of the last quarter of 1938 taxes, which amounted to $2.55, in addition to the listed price set out in the notice of re-sale, was merely an over-payment, such as was probably contemplated by the Legislature in the last paragraph of Section 432f above quoted.

█ The trial court, in determining that the notice and deed were invalid, based his reasoning upon Whitehead v. Garrett, 199 Okl. 278, 185 P.2d 686, wherein this court held a notice of resale of land for non-payment of taxes fatally defective, for including all taxes assessed for a certain year, when the last quarter thereof was not delinquent at the date of the first publication of the notice of resale; and that the resale and deed based thereon were invalid, notwithstanding the fact that the taxes for that quarter were only 53¼ cents. The defendant seeks to uphold the trial court's decision by citing the cases of Lind v. McKinley, 196 Okl. 4, 161 P.2d 1016; House v. Mainka, 196 Okl. 174, 163 P.2d 225, and Carman v. McMahan, 198 Okl. 367, 178 P.2d 626. The rule laid down in all these cases is simply and concisely that where the last quarter of taxes for the years preceding a resale was included in

the notice of resale when the last quarter was not delinquent as of the date of the first publication of notice of resale, but which was due and delinquent on May 1 subsequent to date of first publication of notice of resale and prior to date of sale, snch tax sale is invalid. Lawrence v. Ayres, 206 Okl. 218, 242 P.2d 142.

■ But in the case at bar such were not the facts. The notice did not include taxes for the entire year, only three quarters, and the last quarter was not due and delinquent prior to date of sale, April 17, in this instance; therefore, since the purchaser would have had to pay the last quarter of 1938 taxes if the deed had been issued before May 1, the language complained of by the defendant, and which the trial court held defective, was harmless.

68 O.S.1941 § 432h provides:

"To defeat the deed it must be clearly plead and clearly proven that one or more of the essential prerequisites to the vesting of authority in said County Treasurer to execute such deed was wholly omitted and not done; and a showing that one or more of said prerequisites was irregularly done shall not be sufficient to defeat the deed."

68 O.S.1941 § 453 provides:

" * * * The rule that tax proceedings are to be strictly construed as against the tax purchaser, shall not apply to proceedings under this Act, but in all courts its provisions shall be liberally construed, to the end that its provisions and all proceedings thereunder shall be sustained."

In King v. Slepka, 194 Okl. 11, 146 P.2d 1002, 1004, we cited and followed previous cases in applying the above statutory rule to a resale tax deed. In so doing, we said:

"It is the plain legislative intent, * * * that substantial compliance with the statutes relating to procedure for the enforced sale of real estate for delinquent taxes is all that is required, and that mere irregularities not affecting the substantial rights of the taxpayer and not in clear violation of the public policy as declared by the Legislature, will not suffice to invalidate the deed. (Citing authorities.)"

The collection of the last quarter of the 1938 taxes from the plaintiff by the County Treasurer was at the most an irregularity, and did not affect the legality of the re-sale of the land to plaintiff.

We are, therefore, of the view, and hold, that the proceedings leading up to the issuance of the re-sale tax deed to the plaintiff, Callie Woodring, and the tax deed itself, are valid, and that the title to the west half of the northeast quarter of Section 30, Township 20 North, Range 15 West, Major County, Oklahoma, should be quieted in the plaintiff.

The judgment of the trial court is reversed, with directions to enter judgment for the plaintiff accordingly.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur.

O'NEAL, J., dissents.

This court acknowledges the services of Attorneys Norma Wheaton, Roy M. Huff and Frank Hickman, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.