**S. R. HAZELRIGG, Plaintiff,**

v.

**AMERICAN FIDELITY & CASUALTY COMPANY, a corporation, Defendant.**

Civ. A. No. 6253.

United States District Court, W. D. Oklahoma.

Jan. 19, 1955.

Butler, Rinehart & Morrison, Oklahoma City, Okl., for plaintiff.

Welcome D. Pierson, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, S. R. Hazelrigg, an Oklahoma citizen, brings this action against the defendant, American Fidelity and Casualty Company, a Virginia corporation, to gain a declaration as to the rights afforded plaintiff under an automobile public liability policy issued to plaintiff by the defendant insurance company.

The controversy in question arises because of a damage action previously asserted against the plaintiff due to a highway collision involving plaintiff's vehicle at a time when the said liability policy was in effect.

In the instant case plaintiff urges that the defendant was guilty of "bad faith" in appealing to the Oklahoma Supreme Court, Hazelrigg Trucking Co. v. Duvall, 261 P.2d 204 from the $60,000 state superior court judgment against the plaintiff in the damage action, which judgment was affirmed on appeal, when subsequent to the judgment but prior to said appeal the defendant could have settled the judgment for $50,000, the upper limit of the liability policy and thus have held the plaintiff insured free from any personal liability.[1] The defendant admits it took the appeal in question but expressly denies such appeal was prosecuted in bad faith; and moves for summary judgment.

Where a liability policy, such as the instant one, gives the insurer the sole right to conduct all settlement negotiations or control the defense in the event the damage action goes to trial,[2] the insurer must exercise the utmost of good faith in using such authority. In determining whether an offered compromise should be accepted, the insurer must not only consider its own interest, but must equally consider what is to the best interest of the insured.[3] A bad faith refusal to settle based solely upon the possible advantages to be gained by the insurer can well render the insurer liable for sums in excess of the stated outer limit of policy coverage. Such bad faith is exemplified where a settlement within policy limits is turned down by the insurer when there is little hope to successfully defend against the asserted claim covered by the policy and

1. In May of 1949, Mrs. Opal Lafever, widow of Virgil Lafever, brought a wrongful death action against the plaintiff in the Superior Court of Seminole County, asking for $92,250 damages. The jury rendered a verdict of $79,375. The trial court required a remittitur of $19,375 and entered judgment for $60,000.

2. The policy provides in part: "Co-Operation of Assured; Expense (B) The Assured shall co-operate with the Company in securing information and evidence and the attendance of witnesses and in the settlement or defense of any suit or prosecution of any appeal. In case of trial the Assured, if requested, shall present himself in due time for the preparation of his defense at the office of the attorneys designated by the Company and shall attend such trial of such suit. The Assured shall not admit or voluntarily assume any liability nor offer to settle any claim, nor incur any expense, except for such first medical aid as shall be imperative at the time of any such accident, without the written consent of the Company. The Assured shall at all times render to the Company all co-operation and assistance within his power. * * *"

3. As mentioned by Chief Judge Phillips in American Fidelity & Casualty Co., Inc., v. G. A. Nichols Co., 10 Cir., 1949, 173 F.2d 830, 832: "When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. * * * While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith." Accord, American Fidelity & Cas. Co. v. All American Bus Lines, 10 Cir., 1951, 190 F.2d 234, 238. See National Mutual Casualty Co. v. Britt, 1948, 203 Okl. 175, 200 P.2d 407, and cases cited therein at pages 411–414, 218 P.2d 1039.

where in all likelihood the judgment to be obtained will be far in excess of the policy coverage.[4]

Although generally the question of bad faith is one of fact for the jury the Court believes that the record in its present state conclusively shows that the defendant has not been guilty of bad faith and is entitled to judgment as a matter of law.

Plaintiff makes no claim that the defendant company should have settled the damage suit in question prior to trial in the state superior court. The charge of bad faith is predicated exclusively upon defendant's refusal to settle the $60,000 state court judgment for $50,000, rather than appeal. Although the $60,000 judgment was affirmed, thus making the insured personally responsible for $10,000, there is no evidence of bad faith properly submittable to a jury. Not only did the defendant insurer, in appealing, do what it contractually had the right to do, under the policy,[5] but the pleadings and evidence now before the Court clearly demonstrate that the defendant was in good faith. Although a majority of the Oklahoma Supreme Court affirmed the appealed from judgment,[6] a strong dissenting opinion, concurred in by two Associate Justices, was filed by the Chief Justice.[7] A reading of this dissenting opinion establishes beyond question the reasonableness of the points relied upon by the defendant in prosecuting such appeal and evinces there was considerable likelihood that the appeal would meet with success.[8] Had the appeal been successful in bringing about a reversal both the insured as well as the insurer would have benefited. Although the insurer in conducting the defense for the insured cannot ignore the obvious best interest of the insured in favor of its own, conversely the insurer, in order to show good faith is not required to totally ignore its own interest and waive the right to appeal even where admittedly such appeal could be prosecuted with considerable hope for success. Under the terms of the policy the defendant had the right, in the absence of bad faith, to either settle or litigate all claims covered by the policy. The defendant having in good faith begun to litigate the asserted claim in the state superior court, does not have to at its own peril continue such litigation

4. As observed in the American Fidelity case, footnote 3, supra, 173 F.2d at pages 832, 833: " * * * Under that evidence, we think the chance that the jury would return a verdict in favor of Nichols (the insured) was slight and that it was highly probable a verdict would be returned in favor of Courtney in an amount greatly in excess of the coverage of the policies. In that posture of the case, since the offer of settlement was for the full amount of the coverage, litigating the Courtney case to finality would subject the Casualty Company, except for the possibility of the liability here asserted, only to a nominal risk, but would subject Nichols to a very substantial risk."

5. Read footnote 2, supra.

6. See Hazelrigg Trucking Co. v. Duvall, Okl. 1953, 261 P.2d 204.

7. Ibid, at page 210 et seq.

8. For example, in concluding his dissent, Chief Justice Halley stated [261 P.2d 212]: "The third reason this case should be reversed is that the size of the verdict shows that it was not rendered by a fair and impartial jury. The jury's verdict was for $79,375. There was no evidence to justify such a verdict. The most the deceased ever made was $3,000 a year. He was a tenant farmer and laborer. There was some evidence that he traded in stock but this was very sketchy. He could not read and write. He was thirty-seven years old and at the peak of his earnings in the type of work he was equipped to do. I have been unable to find any case where the maximum income of the deceased was $3,000 dollars annually that a recovery of almost $2,000 a year for the life expectancy was allowed. The value of the dollar does not enter in so much in a case of this kind, but it is what the deceased would have made and what part of his earnings would have gone to the wife and children. I think that the verdict is so patently the result of bias and prejudice that the case should be retried."

through the appeal channel.[9] Although patently plaintiff challenges the good faith of the defendant in lodging the instant appeal, what plaintiff in substance seeks to invoke is a rule of outright liability against the insurer for refusing to settle within policy limits; and, an insurer is not subject to such a rule.[10]

Defendant's motion for summary judgment should be sustained. Counsel should submit a journal entry which conforms with this opinion within 15 days.

9. Read Davis v. Maryland Casualty Co., 1931, 16 La.App. 253, 133 So. 769, 772, where the Louisiana Court said: "The only allegation of bad faith alleged in plaintiff's petition is that insurers appealed the case of Hodges v. Davis in an attempt to coerce Davis into paying a part of the amount agreed on as a compromise. The insurers had the right to elect (given them by the policy) to contest the claim or to settle it, and they elected to contest it rather than pay the full amount of the policy. Does that show bad faith? We think not. All that is required of the insurer is good faith in its actions in contesting a claim, and to say that, because they took an appeal, they have acted in bad faith, would be to penalize them for exercising a contractual right. It is not unusual for the appellate courts to reverse a judgment of the lower court even on facts, or to reduce or increase the amount of the award in the lower court; and for us to hold that, because defendants did appeal, they are liable for the difference between the judgment finally rendered and the compromise offered, would be to hold that the insurers were obligated to settle all claims, within the amount of the policy, before final determination, and that, whenever it appealed, it do so at its peril. It would be to read out of the contract between the insurers and the assured the very clause placed therein to protect the insurers from collusion and fraud between the assured and a third person who might be injured."

10. As noted by Judge Murrah in St. Paul-Mercury Indemnity Co. v. Martin, 10 Cir., 1951, 190 F.2d 455, 457: " * * * We are asked to answer whether in cases of questionable liability, the excess insurer can force the primary insurer to pay its full policy limits in settlement on threat of liability for full amounts of possible judgments if the settlements are refused. The answer is no. As the primary insurer, St. Paul was required under its relationship to its insured and the excess insurer, to exercise good faith in determining whether an offer of compromise of settlement should be accepted or rejected. It owed them the duty to exercise an honest discretion at the risk of liability beyond its policy limits. (Citing authority.) But, it is not required to prophesy or foretell the results of litigation at its peril. If it acts in good faith and without negligence in refusing the proffered settlement, it has fulfilled its duty to its insured, and those in privity with it (citing authority)". A fortiori, in the instant case where there is no charge of bad faith in not settling the case prior to submitting the cause to a jury, the insurer has the right to appeal, particularly where forceful arguments for reversal existed.