2010 OK 14

Don W. **TUCKER** and Larry B. **Johnson,**
Plaintiffs/Appellants,

v.

**NEW DOMINION, L.L.C.,**
Defendant/Appellee.

No. 106,322.

Supreme Court of Oklahoma.

Feb. 23, 2010.

Charles B. Davis, Norman, Oklahoma, for the appellants.

Fred M. Buxton, Tulsa, Oklahoma, and Elizabeth C. Nichols, Edmond, Oklahoma, for appellee.

TAYLOR, V.C.J.

¶ 1 The question presented is whether, under the circumstances, the misspelling of the name Olinka Hrdy as Olinka Hardy in the publication notices and other documents filed in an Oklahoma Corporation Commission proceeding having as its purpose the pooling of mineral interests renders the Commission's pooling order invalid as to Olinka Hrdy for lack of due process. We answer in the negative.

## I. FACTS

¶ 2 Olinka Hrdy was the owner of a fractional mineral estate in property described as the SE/4 of Section 9, T11N, R6E, Pottawatomie County, Oklahoma (subject property). Ms. Hrdy died in 1987. This mineral estate was not included in the final probate order, leaving Ms. Hrdy as the record owner and leaving the probate order unindexed against the subject property in the Pottawatomie County clerk's office.[1]

¶ 3 On May 7, 2004, New Dominion, L.L.C. (New Dominion) filed an application with the Oklahoma Corporation Commission (Commission) seeking to pool the mineral interests in the subject property. New Dominion attempted to mail notice to Ms. Hrdy at a post office box in Prague, Oklahoma, but the notice was not deliverable. Thereafter, notice was given by publication. None of the pleadings and notices filed with the Commission nor the publication notices named Olinka Hrdy as having in interest in the property. Rather, they named Olinka Hardy. The Commission issued a pooling order requiring the mineral owners to elect within twenty days to either (1) participate, (2) not partici-

pate and receive a 3/16 royalty and $50.00 per acre bonus, or (3) not participate and receive a 1/8 royalty and $60.00 per acre bonus. A mineral owner not making an election was deemed to have chosen option three, 1/8 royalty interest and $60.00 per acre bonus. No election was made on behalf of Olinka Hrdy. New Dominion completed the Noel No. 1–9 on the property.

¶ 4 On March 28, 2007, the district court, sitting in probate, issued an order *nunc pro tunc* awarding Ms. Hrdy's mineral interest to Larry B. Johnson. However, on March 21, 2007, Johnson had entered into an oil and gas lease with Don W. Tucker for 3/16 royalty. The lease was filed of record on March 23, 2007. On April 24, 2007, Tucker wrote New Dominion seeking to participate in the Noel No. 1–9, asserting that Ms. Hrdy's interested had not been pooled.

¶ 5 When New Dominion refused to acknowledge that Tucker was entitled to participate in the Noel No. 1–9, the plaintiffs filed a quiet title suit in the District Court of Pottawatomie County and asked for an accounting and recovery of all unpaid royalties with interest as a participant in the well. New Dominion filed a motion to dismiss, arguing that the suit was an improper collateral attack on the Commission's pooling order. The district court granted the motion to dismiss. The plaintiffs appealed (Appeal No. 105,052), and the Court of Civil Appeals treated the motion to dismiss as a motion for summary judgment and reversed the district court's order. *Tucker v. New Dominion, L.L.C.*, 2008 OK CIV APP 42, 182 P.3d 169. Finding that the suit was one to resolve a dispute over private rights rather than public rights, the Court of Civil Appeals determined that the suit was properly filed in the district court. *Id.* at ¶¶ 7–8, 182 P.3d at 171. New Dominion filed a petition for writ of certiorari, which this Court denied.

¶ 6 Upon remand to the district court, New Dominion filed an answer and counterclaim in which New Dominion asked the court to "declare the rights of the parties to receive royalties in the specific formations pooled"

---

1. Larry B. Johnson, the administrator of Ms. Hrdy's estate, failed to include the subject prop- erty interest and another property in the estate's final accounting.

by the Commission.[2] Thereafter, New Dominion filed a motion for summary judgment, arguing that Olinka Hrdy's mineral interest had been force pooled by the Commission's order, asking for a declaration that the publication notice to "Olinka Hardy" was sufficient, and asking the district court for an order that the plaintiffs were subject to the pooling order. New Dominion urged that publication notice naming Olinka Hardy was effective as notice to Olinka Hrdy under the doctrine of *idem sonans,* literally "having the same sound." New Dominion continued that, because Olinka Hrdy received sufficient notice and no election was received on her behalf, she or her successors in interest were deemed to have opted for the bonus and 1/8 royalty interest under the terms of the pooling order.

¶ 7 The plaintiffs responded to New Dominion's motion for summary judgment and filed their own motion for summary judgment. The plaintiffs took the position that the doctrine of *idem sonans* was not applicable because (1) no one appeared on behalf of Olinka Hrdy before the Commission and no one was actually served on her behalf and (2) New Dominion knew the correct spelling of Hrdy, failed to use the correct spelling, and did not correct the error. The plaintiffs urged that Olinka Hrdy did not have sufficient notice, the Commission did not have jurisdiction to pool her interests, and, thus, her interest, now the plaintiffs', was not subject to the Commission's pooling order.

¶ 8 The district court granted summary judgment in New Dominion's favor and found that New Dominion had properly served Olinka Hrdy's interest by publication under the doctrine of *idem sonans.* The district court also found that "Johnson, as heir of Olinka Hrdy's interest, and Tucker, as Johnson's lessee, are subject" to the Commission's pooling order. The district court concluded that New Dominion was entitled to judgment on the plaintiffs' claim for quiet title to the extent that the plaintiffs asserted rights inconsistent with the pooling order.

¶ 9 The plaintiffs appealed the district court's order, and this order is the one presently before this Court. However, the appeal was assigned to the Court of Civil Appeals for disposition. The Court of Civil Appeals found that New Dominion did not meet its burden of submitting evidentiary material to establish its assertion that the pronunciation of "Hrdy" and "Hardy" sound substantially the same and to establish other factors supporting the application of the doctrine of *idem sonans.* The Court of Civil Appeals reversed the order granting summary judgment and remanded the case for further proceedings.

¶ 10 New Dominion filed its petition for writ of certiorari. In its petition, New Dominion argued that the facts at issue relating to the factors of *idem sonans* are so obvious and self-evident that this Court should take judicial notice of them. This Court granted certiorari.

## II. SUMMARY JUDGMENT AND STANDARD OF REVIEW

¶ 11 Under Rule 13(a) of the Rules of District Courts, 12 O.S.2001, ch. 2, app., a party may move for summary judgment or summary disposition of any issue when the evidentiary materials filed in support of the motion show that there is no genuine issue of any material fact. The moving party must support the motion by attaching and referencing evidentiary materials supporting the party's statement of undisputed facts. *Id.* The opposing party must state the material facts which the party contends are disputed and attach supporting evidentiary materials. *Id.* The court shall grant judgment to one of the parties if it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law. *Id.* at Rule 13(e).

¶ 12 Summary judgment settles only questions of law. *Rox Petrol., L.L.C. v. New Dominion, L.L.C.,* 2008 OK 13, ¶ 2, 184

2. District court power over a Commission order is limited to ascertaining whether the order is facially void. *Chancellor v. Tenneco Oil Co.,* 1982 OK 122, ¶ 16, 653 P.2d 204, 207. However, a mineral interest owner deprived of participation for lack of proper notice who seeks an order allowing the owner to participate must do so with the Commission. *Id.; Nilsen v. Ports of Call Oil Co.,* 1985 OK 104, n. 5, 711 P.2d 98, 105 n. 5 (Opala, J., concurring in judgment).

P.3d 502, 504. We review rulings on issues of law by a *de novo* standard pursuant to the plenary power of the appellate courts without deference to the trial court. *Glasco v. State ex rel. Okla. Dept. of Corrections,* 2008 OK 65, ¶ 8, 188 P.3d 177, 181. Thus, summary judgments are reviewed *de novo. Id.*

## III. ANALYSIS

■ ¶ 13 The Commission when issuing pooling orders is functioning in an adjudicatory capacity. *See Harry R. Carlile Trust v. Cotton Petroleum Corp.,* 1986 OK 16, ¶ 8, 732 P.2d 438, 441–442. The Commission's adjudicatory function is comparable to a court's. *Id.* ¶ 9, 732 P.2d at 442. Constitutional due process requirements governing notice apply to Commission adjudicatory proceedings in the same force and quality as to judicial proceedings. *Id.*

■ ¶ 14 Before a person's interest can be adversely affected by a judicial process or, as in this case, a Commission adjudicatory proceeding, the Fourteenth Amendment to the United States Constitution and Article 2, section 7 of the Oklahoma Constitution[3] require notice and an opportunity to be heard. *PFL Life Ins. Co. v. Franklin,* 1998 OK 32, ¶ 9, 958 P.2d 156, 162. Notice is jurisdictional and an indispensable element of due process, *Shamblin v. Beasley,* 1998 OK 88, ¶ 12, 967 P.2d 1200, 1209, and is the mechanism for affording the opportunity to be heard. *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). Due process "requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Shamblin,* 1998 OK 88, ¶ 12, 967 P.2d at 1209; *Booth v. McKnight,* 2003 OK 49, ¶ 20, 70 P.3d 855, 862. "The 'due process of law' clause, however, does not impose an unattainable standard of accuracy." *Grannis,* 234 U.S. at 395, 34 S.Ct. 779. The test in determining if the requirements of due process have been met is whether, under all the circumstances, the person being summoned would have recognized that she was being haled into court. *Collingsworth v. Hutchison,* 1939 OK 17, ¶ 7, 185 Okla. 101, 90 P.2d 416, 418.

■ ¶ 15 When notice is by publication, as it is here, the general rule tends toward strictness. *Grannis,* 234 U.S. at 395, 34 S.Ct. 779. However, even with names exact accuracy is not required, and the well-established doctrine of *idem sonans* is a recognition of this. *Id.* In employing the doctrine of *idem sonans,*[4] the entire name is taken into account. *See Maine v. Edmonds,* 1916 OK 1063, 58 Okla. 645, 160 P. 483. If two names are pronounced similarly in the English language, a variance in their spelling is immaterial. *Id.* at ¶ 4, 160 P. at 484–485. We have found the following names were *idem sonans:* (1) Hutchison and Hutchinson, *Collingsworth,* 1939 OK 17 at ¶ 0, 90 P.2d at 416 (Syllabus by the Court), (2) Crittenden Smith and Crittenden & Smith, *King v. Slepka,* 1944 OK 138, ¶ 0, 194 Okla. 11, 146 P.2d 1002, 1003 (Syllabus No. 5 by the Court); and Edmonds and Edmunds, *Maine v. Edmonds,* 1916 OK 1063 at ¶ 4, 160 P. at 485.

■ ¶ 16 The combination of the letters "hrdy" is unknown in the English language,[5] because English words have a vowel between the "h" and the "r." *See American Heritage Dictionary* 595, 607, 613, 622, 628 (2nd coll.

---

3. The definitional sweep of Oklahoma's due process clause, Okla. Const. art. 2, § 7, is coextensive with the Fourteenth Amendment to the United States Constitution. *DuLaney v. Okla. State Dept. of Health,* 1993 OK 113, n. 33, 868 P.2d 676, 685 n. 33.

4. We can take judicial notice of adjudicative facts within the common knowledge or "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." 12 O.S.2001, § 2202(B); *Bd. of Education of Independent Sch. Dist. No. 20 of Craig County v. Adams,* 1970 OK 23, ¶ 11, 465 P.2d 464, 467. In this regard, this Court can take judicial notice of the sounds of words, including names, *see Grannis,* 234 U.S. at 398, 34 S.Ct. 779; *Collingsworth,* 1939 OK 17 at ¶ 7, 90 P.2d at 418; and, likewise, of phonetic spellings found in dictionaries showing the pronunciation of words and rules of pronunciation.

5. Hrdy is a Czech word meaning proud. Alois Cermak, *English–Czech Czech–English Dictionary* 634 (Saphrograph Co.1963). The pronunciation of Hrdy in Czech is HUHR-dee. Inogolo.com, *http://inogolo.com/pronunciation/Hrdy* (last visited Feb. 4, 2010). Olinka Hrdy, as pronounced in the Czech language, and Olinka Hardy are clearly *idem sonans.*

ed.1976). So, "Hrdy" would be pronounced with a vowel between the "h" and the "r." Thus, English-speaking persons would pronounce Hrdy as hardy, phonetically spelled as här'dē; as herdy, hirdy, or hurdy, phonetically spelled as hûr'dē; or as hordy, phonetically spelled hôr'dē. *See* Thorleif Larsen & Francis C. Walker, *Pronunciation: A Practical Guide to American Standards* 73, 86 (Oxford Univ. Press 1931); *see American Heritage Dictionary* at 595, 607, 613, 622, 628. The similarity in the sound of Hrdy and Hardy, coupled with the unusual first name of Olinka, make "Olinka Hrdy" and "Olinka Hardy" sound sufficiently similar to be *idem sonans.*

¶ 17 The doctrine of *idem sonans* is only one test under which we examine the circumstances here for compliance with due process. In answering the question whether, under all the circumstances, the person being haled into court would be misled into thinking that someone else was being summoned, *Collingsworth,* 1939 OK 17 at ¶ 7, 90 P.2d at 418; *see Grannis,* 234 U.S. at 397, 34 S.Ct. 779, we also consider other factors.

¶ 18 In *Collingsworth v. Hutchison,* 1939 OK 17, 185 Okla. 101, 90 P.2d 416, a quiet title action was brought based on a tax sale with the service by publication containing the name "O.F. Hutchinson." The issue was whether the judgment rendered in the tax sale proceedings was binding on "O. F. Hutchison" and his heirs. This Court found that the difference in sound of "O.F. Hutchinson" and "O.F. Hutchison" would be scarcely perceptible by the generality of mankind. *Id.* at ¶ 6, 90 P.2d at 417. This Court then noted that the names appear substantially the same in print but that the entire notice should be considered. Taking notice that the average person examining the notice would not fail to observe the land's description, this Court found that, given the similarity in the look of the names coupled with the legal description, the plaintiff would not be misled by the misspelling of the name. *Id.* at ¶ 5, 90 P.2d at 417.

¶ 19 In *Grannis v. Ordean,* 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), the last name of Geilfuss was misspelled as Guilfuss in the notice published in the newspaper. In determining whether the notice was sufficient constructive notice, the United States Supreme Court did not confine itself to the tests of whether the names sounded and looked similar but adopted "additional tests as may be available in view of what is disclosed by the record." *Id.* at 397, 34 S.Ct. 779. One such test was whether "any person knowing him, and knowing the correct spelling of his name, and having reason to acquaint him with the contents of a notice of this character if supposed to be intended for him, would probably realize for whom such notice was intended, notwithstanding the name was spelled 'Guilfuss.' " *Id.* at 398, 34 S.Ct. 779.

¶ 20 Both *Grannis* and *Collingsworth* considered that the actions were *in rem* and that the notices described the land at issue. Both courts looked at the auditory and visual similarities as well as asking whether a person for whom the notice was intended would be sufficiently warned that the notice affected the person's interest in the land. We find the tests employed in the *Grannis* and *Collingsworth* opinions are applicable here.

¶ 21 We note the similarity in the sounds of "Olinka Hrdy" and "Olinka Hardy," but this is not the only test we employ. Here "Olinka Hrdy" and "Olinka Hardy" are visually similar. The notice here contains a description of the subject property which would alert the owner of the proceedings against the property. But ultimately our decision rests, not only in the auditory and visual similarities in the names but also, on the fact that neither Ms. Hrdy nor the plaintiffs would have been mislead by the misspelling and would have recognized that Ms. Hrdy's property could be affected by the Commission proceedings. The publication notice here met the requirements of due process. Ms. Hrdy and the plaintiffs had constructive notice of the Commission proceedings and, thus, were bound by the Commission's pooling order. Thus, the plaintiffs' mineral interests in the subject property were not superior to the interest claimed by New Dominion.

## IV. CONCLUSION

¶ 22 We conclude that notwithstanding the misspelling of Olinka Hrdy's name as Olinka

Hardy in the publication notice and in the documents filed with the Commission in the pooling proceeding, the plaintiffs, as Olinka Hrdy's successors in interest, are bound by the Commission's forced pooling order, and the plaintiffs' mineral interests are secondary to the rights extended to New Dominion by the forced pooling order.

¶ 23 The Court of Civil Appeals' opinion is vacated. The district court's judgment in New Dominion's favor is affirmed, and the cause is remanded to the district court.[6]

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT AFFIRMED; CAUSE REMANDED.**

ALL JUSTICES CONCUR.

---

**6.** In the order granting judgment in New Dominion's favor, the district court reserved ruling on the costs and attorney fees.