2011 OK 72

**Patricia SHULL and Brian Shull, Plaintiffs/Petitioners,**

v.

**Monica REID, M.D., Andrew Elimian, M.D., Andrew Wagner, M.D., Eric Knudtson, M.D., and OU Medical Center, Defendants/Respondents.**

No. 109,136.

Supreme Court of Oklahoma.

July 6, 2011.

---

522

Giles H. Manley, M.D. & Hal J. Klienman (pro hac vice), Janet, Jenner & Suggs, LLC, Baltimore Maryland, and Shannon F. Davies, Courtney D. Powell, Andrew W. Lester, Lester Loving & Davies P.C., Edmond, Okla-

Chad Moody, Leslie C. Weeks, Sidney D. Smith, Jr., Rodolf & Todd, Tulsa, Oklahoma, for OU Medical Center, Defendants/Appellees.

Kyle N. Sweet, Vanessa A. Hicks, The Sweet Law Firm, Oklahoma City Oklahoma, for Monica Reid M.D., Andrew Elimian M.D., Andrew Wagner, M.D., and Eric Knudtson, M.D., Defendants/Appellees.

COMBS, J.

¶ 1 On June 8, 2009, the Shulls initiated an action sounding in medical malpractice seeking compensation for the injuries suffered as a result of the Appellees' alleged malpractice in failing to properly diagnose a Cytomegalovirus infection,[1] hereinafter referred to as CMV, that occurred during Patricia Shull's first trimester of pregnancy, and failing to inform the Shulls of the significant health risk to their unborn child. The Shulls alleged that, as a direct and proximate result of this failure to diagnose and inform, Shull's minor son was born on June 9, 2007, with the CMV infection and suffers significant complications rendering the child permanently and completely helpless. The Shulls do not claim Defendants could have treated CMV or that the Defendants were responsible for Mrs. Shull's exposure to CMV. The Shulls claim that, had they known of the virus, they would have terminated the pregnancy.

¶ 2 Defendants/Appellees filed a Partial Motion for Summary Judgment alleging the Shulls may only recover damages for the medical cost of continuing the pregnancy, offset by the cost of termination of the pregnancy. The district court found the issue raised in the Defendants/Appellees' motion was one of first impression and the trial court lacked guidance because there were no published opinions from this Court addressing what damages are available to parents of an unhealthy, abnormal child, bringing a claim for wrongful birth and medical malpractice. The trial court, claiming judicial economy, suggested to the parties it was procedurally preferable to grant defen-

1. CMV is a common virus and a member of the    herpes virus family.

dants/appellees' motion for partial summary judgment, and let this matter pass to this Court as a Certified Interlocutory Order on a Petition for Certiorari.

## STANDARD OF REVIEW

¶ 3 An appeal on summary judgment comes to this Court as a *de novo* review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On appeal, this Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084; *Tucker v. New Dominion, L.L.C.*, 2010 OK 14, ¶ 12, 230 P.3d 882, 885–886.

## ISSUE ON APPEAL

¶ 4 The issue raised on appeal is what damages are available in this medical malpractice case. The only proposition in Defendants/Appellees' motion for partial summary judgment was the Shulls' damages, based on Appellees' alleged malpractice, are limited to the medical cost of continuing the pregnancy, offset by the cost of termination the Shulls would have elected to have, had they known of their child's exposure to the CMV infection. The district court sustained the motion, limiting damages to that amount.

## ANALYSIS

¶ 5 This Court has previously addressed the question of wrongful conception in three separate cases. The first case was *Morris v. Sanchez*, 1987 OK 110, 746 P.2d 184, where this Court found the birth of a healthy child does not constitute a legal harm for which damages are recoverable.[2] The next case was *Goforth v. Porter Medical Associates, Inc.*, 1988 OK 63, 755 P.2d 678, where again, this Court found that the birth of a normal, healthy child is not a compensable damage. However, this Court held:

> Morris, however, should not, and must not, be interpreted as precluding a claim for other forms of damages that may arise out of the negligent performance of steriliza-

2. *Morris v. Sanchez*, 1987 OK 110, ¶ 12, 746 P.2d 184, 188, citing *Byrd v. Wesley Medical Center*,

tion operations. Insofar as the petition in this case alleges negligence and actual, ordinary damages arising out of the alleged negligence, to-wit: $2,000.00 in medical expenses incurred as result of the unplanned pregnancy, we are of the opinion that the petition adequately states a claim for which relief may be granted.

*Goforth v. Porter Medical Associates, Inc.*, 1988 OK 63, ¶ 5, 755 P.2d 678, 680. Finally, in *Wofford v. Davis*, 1988 OK 112, ¶ 7, 764 P.2d 161, 162, this Court again disallowed recovery of damages for raising a healthy child, but allowed for damages that may arise out of the negligent performance of sterilization operations. These cases dealt with normal, healthy children, born after failed attempts at sterilization.

¶ 6 To reach that result we relied upon the Kansas case, *Byrd v. Wesley Medical Center*, 237 Kan. 215, 699 P.2d 459 (1985). We again turn to another Kansas case for guidance. In *Arche v. United States of America, Department of the Army*, 247 Kan. 276, 798 P.2d 477 (1990), the Kansas Supreme Court was requested to answer two questions. First, did Kansas law recognize a cause of action for wrongful birth of a permanently handicapped child, and if so, what is the extent of damages which may be recovered upon proper proof. The Kansas Court held:

> Wrongful birth plaintiffs typically desire a child and plan to support the child. Such support is, of course, the obligation of all parents. It is therefore reasonable to deny those normal and forseeable (sic) costs which accrue to all parents. We hold that those expenses caused by the child's handicaps may be recovered, but not those expenses natural to raising any child. (citations omitted)

*Arche v. United States of America, Department of the Army*, 247 Kan. 276, 282–283 798 P.2d 477, 481 (1990). The Kansas Court then addressed the plaintiff's emotional damages and found that such damages were not allowable in this type of medical malpractice action. They held:

237 Kan. 215, 699 P.2d 459 at 467–468 (1985).

We have thus far held that visibility of results as opposed to visibility of the tortious act does not give rise to a claim for emotional damages. The child's injury in this case occurred without human fault during development of the fetus; the parents were not aware of the injury at the time. The parents in Schmeck[3] were responsible for their disabled child and suffered emotional distress because of the disablement, but were denied recovery for emotional distress. We see no reason why a wrongful birth case should be distinguished. We therefore hold that damages for emotional distress of the parents are not recoverable in a wrongful birth case. *Arche v. United States of America, Department of the Army,* 247 Kan. 276, 283, 798 P.2d 477, 482 (1990). Finally, the Kansas Supreme Court addressed the issue concerning allowable damages, and over what period of time such damages may be recovered. The Kansas Court found that recovery may be had only for the period of time of the child's life expectancy or until the child reaches the age of majority, whichever is the shorter period. *Arche* at 247 Kan. 276, 291, 798 P.2d 477, 486.

¶ 7 In *Liddington v. Burns,* 916 F.Supp. 1127, 1130–1131 (W.D.Okla.1995), the U.S. District Court, sitting in diversity, addressed the issue before us. Applying Oklahoma law, the court found that Oklahoma would recognize an action for wrongful birth. As to damages that court held:

> Neither party briefed the issue of what elements of damages are recoverable in a wrongful birth action. Certainly the extraordinary medical expenses and other pecuniary losses proximately caused by the negligence are recoverable. *Arche v. Unites [United] States of America, Department of the Army,* 247 Kan. 276, 798 P.2d 477 (1990). Just as certainly, the normal and foreseeable costs of raising a normal, healthy child are not recoverable. *Morris v. Sanchez,* 746 P.2d 184 (Okla. 1987).

*Liddington v. Burns,* 916 F.Supp. 1127, 1133 (W.D.Okla.1995).

¶ 8 Subsequent to the birth of the child in the instant case, the Oklahoma State Legislature passed 63 O.S. Supp.2008 § 1–741.11[4] that recognized wrongful birth actions but does not allow a parent, or other person who is legally required to provide for the support of a child, to seek economic or noneconomic damages because of a condition that existed at the time of the child's birth, based on a claim that a person's act or omission contributed to the mother not terminating the pregnancy. This Statute, however, was passed after the birth of the child in the instant matter, and it does not affect our holding in the instant case following this Court's holding in *Welch v. Armer,* 1989 OK 117, ¶ 27, 776 P.2d 847, 850, where we held "[t]he general rule in Oklahoma is that statutes, and amendments, are to be construed to operate only prospectively unless the Legislature clearly expresses a contrary intent." In *Sudbury v. Deterding,* 2001 OK 10, ¶ 19, 19 P.3d 856, 860, this Court held:

> Remedial or procedural statutes may operate retrospectively only where they do not create, enlarge, diminish or destroy vested rights. A substantive change that alters the rights or obligations of a party cannot be viewed as solely a remedial or procedural change and cannot be retrospectively applied.

The statute at hand does acknowledge the tort of wrongful birth and does not show any retrospective intent. The statute is a substantive change to the law which alters the rights and obligations of parties. It cannot be considered merely a remedial or procedural change, and therefore, cannot be retrospectively applied.

¶ 9 We adopt the findings and the rationale, in *Arche* and *Liddington* and hold that in any case arising prior to the enactment of 63 O.S. § 1–741.11 in 2008, in a wrongful birth action alleging medical malpractice, the measure of damages allowable is

---

**3.** *Schmeck v. City of Shawnee,* 231 Kan. 588, 647 P.2d 1263 (1982).

**4.** This Statute was passed and became effective November 1, 2008. It has since been repealed and again passed by the Oklahoma Legislature and is now numbered 63 O.S. Supp.2010, § 1–741.12

the extraordinary medical expenses and other pecuniary losses proximately caused by the negligence. There is no cause of action for emotional distress[5] as the child's injury in this case occurred without human fault during development of the fetus, and the parents were not aware of the injury at the time. Loss of consortium is also not allowable in the instant matter as Oklahoma law does not provide for this type of damage in the instant case.[6] Finally, recovery may be had only for extraordinary expenses, not the normal and foreseeable costs of raising a normal, healthy child, for the period of time of the child's life expectancy or until the child reaches the age of majority,[7] whichever is the shorter period.

**CERTIORARI PREVIOUSLY GRANTED; CERTIFIED INTERLOCUTORY ORDER REVERSED AND REMANDED**

¶ 10 CONCUR: WATT, EDMONDSON, REIF, COMBS, GURICH, JJ.

¶ 11 DISSENT: KAUGER (I DISSENT TO THE PREMATURE CONSIDERATION OF THIS QUESTION OF FIRST AND LAST IMPRESSION. THIS CASE SHOULD GO TO TRIAL AND THEN ANY PARTY MAY APPEAL THE VERDICT BASED UPON A COMPLETED RECORD.), J., TAYLOR (JOINS KAUGER, J.), C.J., WINCHESTER (JOINS KAUGER, J.), J.

¶ 12 NOT PARTICIPATING: COLBERT, V.C.J.

5. In *Kraszewski v. Baptist Medical Center of Oklahoma, Inc.*, 1996 OK 141, ¶ 11–12, 916 P.2d 241, 249, this Court adopted a direct victim approach to emotional distress similar, but even more far reaching than that of Kansas' witness approach. The plaintiff must be a victim, not a bystander, directly involved in the incident, damaged from directly viewing the incident and a close family relationship must exist between the plaintiff and the party whose injury gave rise to plaintiff's mental anguish.

6. In *Walker v. St. Louis–San Francisco Ry. Co.*, 1982 OK 25, ¶ 25, 646 P.2d 593, 600, this Court recognized that a spouse is entitled to bring a derivative action for loss of consortium, that is as a result of a direct injury to a spouse. In *Williams v. Hook*, 1990 OK 136, ¶ 10–11, 804 P.2d 1131, 1136, the right to parental consortium was extended to children of a totally disabled parent.

7. This Court has previously held that a parent has a legal duty to support his or her child until the child reaches the age of majority. *Holleyman v. Holleyman*, 2003 OK 48, ¶ 7, 78 P.3d 921, 924; *State ex rel. Dept. of Human Services v. Baggett*, 1999 OK 68, ¶ 22, 990 P.2d 235, 244.