2016 OK CIV APP 11

The JAYSON W. DAVISON TRUST OF 2010, u/t/a 7/8/10 and Jayson W. Davison, Trustee, Plaintiff/Appellant,

v.

Pat BROCKHAUS, Defendant/Appellee,

and

Don Wayne Brockhaus, Successor Trustee of the Arthur J. Brockhaus Trust, u/t/a 4/1/1994, Defendant/Third Party Plaintiff/Appellee,

v.

Logan County Treasurer, Third Party Defendant/Appellee.

No. 113,175.

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 26, 2015.

Paul Streck, Streck & Associates, Edmond, Oklahoma, for Plaintiff/Appellant.

Kraettli Q. Epperson, Sara K. Hawkins, Mee Mee Hoge & Epperson PLLP, Oklahoma City, Oklahoma, for Defendant/Appellee and Defendant/Third Party Plaintiff/Appellee.

JANE P. WISEMAN, Judge.

¶1 The Jayson W. Davison Trust of 2010, u/t/a 7/8/10, and Jayson W. Davison, Trustee, appeal the trial court's order granting summary judgment in favor of Defendant and Third–Party Plaintiff, Don Wayne Brockhaus, Successor Trustee of the Arthur J. Brockhaus Trust, u/t/a 4/1/1994. The primary issue on appeal is whether Don Brockhaus, as successor trustee, received the required notice of the tax sale of certain real property in Guthrie, Oklahoma. This appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2014, ch. 15, app. 1, without appellate briefing. After review, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Jayson W. Davison, as trustee as of the Jayson W. Davison Trust of 2010, u/t/a 7/8/10 (Davison), filed an affidavit for forcible entry and detainer in small claims court in July 2012, alleging he is the owner of property at 708 Meadow Rock Trail, Guthrie, Oklahoma. Davison obtained the property on June 11, 2012, through a County Treasurer's resale deed, and placed the property in the Jayson W. Davison Trust of 2010 (Davison Trust) through a quit claim deed dated June 26, 2012. Pat Brockhaus was named as the defendant. Davison seeks possession of the property, alleging Brockhaus lives on the property and is wrongfully in possession of it.

¶3 Brockhaus asked that the case be dismissed because it was brought as an eviction proceeding and because he claims an ownership interest in the property, the proper action is one in ejectment. Brockhaus further alleged the Logan County Treasurer failed to obtain proper service and or to give proper notice of the tax resale of the property. The case was transferred from the small claims division to the civil division docket on October 25, 2012.

¶4 Davison filed a motion for summary judgment, and in his brief in support of the motion, he alleged as undisputed the facts summarized and quoted below. We have included Brockhaus's response to each statement of undisputed fact.

- The Davison Trust is the owner of the property located at 708 Meadow Rock Trail, Guthrie, Oklahoma (Property), pursuant to a County Treasurer's Resale Deed, dated June 11, 2012, and a quit claim deed dated June 26, 2012, which placed the property in the Davison Trust. (*Disputed.* "Don Wayne Brockhaus, Trustee of the Arthur J. Brockhaus Trust, U/T/A 4/1/1994, is the owner of [Property]. Defendant, Pat Brockhaus, has an equitable interest in [Property].")
- Pat Brockhaus resides at the Property and his mailing address is 708 Meadow Rock Trail, Guthrie, Oklahoma. (*Admitted.*)
- Pat Brockhaus is wrongfully in possession of Property. (*Disputed.*)

• Davison Trust has legal title to Property and is entitled to possession. Davison Trust has made demand on Pat Brockhaus to vacate, but he has refused to do so. (*"Disputed in Part.* [Davison Trust] does not have legal title to the real property which is a subject of this case. *Admitted in Part.* Pat Brockhaus does refuse to leave the premises.")

• Pat Brockhaus does not currently have any ownership interest in Property and had no ownership interest when Property "was sold for delinquent taxes." "Prior to the tax sale, title to the property was held by the Arthur Brockhaus Trust, u/t/a 4/01/1994." Davison Trust now holds title to Property. (*"Disputed.* Pat Brockhaus has an equitable interest in the property, Don Wayne Brockhaus, Trustee of the Arthur J. Brockhaus Trust, U/T/A 4/1/1994 has legal title to [Property]. [Davison Trust] does not have legal title to [Property] which is a subject of this case.")

• "Pat Brockhaus was initially served with a Ten Day Notice to Quit on June 22, 2012." Pat Brockhaus failed to vacate property and Davison Trust commenced a Forcible Entry and Detainer action. (*Admitted.*)

• "Pat Brockhaus was served with a Forcible Entry and Detainer on August 20, 2012, setting forth a hearing date of August 24, 2012 at 1:30 P.M. The August 24, 2012 hearing was continued to September 6, 2012 at 9:00 A.M. At the hearing on September 6, 2012, following the arguments of counsel, the Court set forth a Briefing Schedule and continued the hearing to October 4, 2012, at 9:00 A.M. The October 4, 2012, hearing was then continued to October 11, 2012, at 9:00 A.M." (*Admitted.*)

• At the October 11th hearing, the trial court found that Davison Trust's action should proceed as one in ejectment and the case should be transferred to the civil division. The trial court ordered Pat Brockhaus to file a verified answer within 10 days after the transfer of the case to the civil division. (*Admitted.*)

• Pat Brockhaus failed to pay the filing fee to transfer the case and Davison Trust paid $85.70 to transfer the case. Pat Brockhaus reimbursed Davison Trust. (*"Disputed in Part.* Defendant, Pat Brockhaus, was not ordered to pay the necessary filing fees to transfer this case. *Admitted.* Defendant, Pat Brockhaus, has subsequently reimbursed the Plaintiff for the transfer fee.")

• Pat Brockhaus's answer was due 10 days after the transfer, or by November 5, 2012. (*Disputed.* Pat Brockhaus filed a brief in support on September 17, 2012. Although the brief was not titled "Answer," "one can easily conclude it contains each and every essential element of an answer.")

• Pat Brockhaus has failed to file a verified answer of any documentation to support his allegation he has an ownership interest in Property. (*Disputed.* Pat Brockhaus filed a brief in support on September 17, 2012. Although the brief was not titled "Answer," "one can easily conclude it contains each and every essential element of an answer.")

• Pat Brockhaus remains in wrongful possession of Property. (*Disputed.*)

¶ 5 Pat Brockhaus filed a supplemental answer, which also contained counterclaims and a third-party petition. The filing added Don Wayne Brockhaus, Successor Trustee of the Arthur J. Brockhaus Trust, u/t/a 4/1/1994 (Brockhaus Trust), as a third-party plaintiff, and added the Logan County Treasurer (Treasurer) as a third-party defendant. Pat and Brockhaus Trust alleged Brockhaus Trust owns Property and that Treasurer conducted a tax sale at which Treasurer purported to sell Property. They asserted Brockhaus Trust was not served with proper notice before the tax sale. They alleged the document that was sent was directed to " 'Brockhaus, Arthur J. Trust c/o Glyna Noe, 10312 Park Road, Edmond, OK 73034–000' not Don Wayne Brockhaus at 10907 Magnolia Blvd., Suite 467, North Hollywood, CA 91601, who is the Trustee of the Trust." Pat and Brockhaus Trust alleged Glyna Noe is not the trustee or successor trustee of this Trust. They further alleged the notice did

not contain "the amount of all delinquent taxes, costs, penalties and interest accrued, due and unpaid as required by 68 O.S. § 3127." The mail sent to the Edmond address was returned unclaimed. No notice was sent to Don Wayne Brockhaus as Successor Trustee or to Pat Brockhaus at Property.

¶ 6 Pat and Brockhaus Trust asserted affirmative defenses of negligence on the part of Davison Trust or Treasurer, that Davison Trust's allegations are not well grounded in fact or law and are not warranted by existing law or by good faith extension of existing law, and that Davison Trust failed to state a claim on which relief could be granted. Pat and Brockhaus Trust alleged claims against Davison Trust for quiet title, trespass, and unjust enrichment.

¶ 7 The trial court overruled Davison Trust's motion for summary judgment. Pat and Brockhaus Trust filed a "motion for leave of the court to amend their counterclaims and complaint of defendant and third party plaintiff and petition of third party plaintiff." The supplemental counterclaims and third-party petition sought to add seven third-party defendants involved in the sale and purchase of 5 properties at the tax sale which are allegedly owned by Brockhaus Trust. Davison Trust objected to the motion for leave to amend. The trial court denied Pat's and Brockhaus Trust's motion for leave to amend and granted Davison Trust's motion to enter on the non-jury docket.

¶ 8 Brockhaus Trust then filed a motion for summary judgment asserting the following as uncontroverted facts:

1. Brockhaus Trust owned Property prior to June 11, 2012.

2. Brockhaus Trust obtained title to Property through a warranty deed dated April 1, 1994.

3. Don Wayne Brockhaus became successor trustee of the Brockhaus Trust after the death of Arthur J. Brockhaus, who was the original trustee.

4. Treasurer caused the purported notice of the resale of Property for delinquent taxes to be published on May 10, 2012, May 17, 2012, May 24, 2012, and May 31,

2012, but Brockhaus Trust did not receive notice.

5. "Treasurer caused purported Resale Notice of the Tax Resale to be mailed by certified mail on or about April 5, 2012 to a sister (Glyna Noe) of Don Wayne Brockhaus, Successor Trustee.... The certified mail was sent to the sister's address and not the Property itself. The sister was not the Trustee nor was she listed as a Successor Trustee in the Memorandum of Trust filed in Book 1559, at Page 103 of the records of Logan County.... Said Memorandum was provided to the Treasurer through a Title Search Affidavit the Treasurer received from Logan County Abstract...."

6. The notice was returned "unclaimed" and Brockhaus Trust never received the notice. "As a result of the Tax Resale Davison holds a County Treasurer's Resale Deed (the "Resale Deed") executed by Treasurer of Logan County on June 12, 2012."

7. "During the time of the publication and mailed Resale Notice of the Tax Resale, [Don] Brockhaus resided in North Hollywood, California and never received actual notice of the Tax Resale."

8. "During the time of the publication and mailed Resale Notice of the Tax Resale, Pat Brockhaus, brother of Don Wayne Brockhaus, Successor Trustee, resided on the Property. Pat Brockhaus never received or was delivered a Resale Notice of the Tax Resale." The Treasurer did not send notice to Property.

9. Don Brockhaus found out about the tax resale after Pat was served at Property with Davison's forcible entry and detainer action. The action was transferred from the small claims division.

10. "Treasurer admits that no notices were served on [Don] Brockhaus prior to the Tax Resale."

11. "Davison filed his action on the underlying premise that the Davison deed is argued by Davison to be a valid instrument."

¶ 9 Brockhaus Trust asserted that due process requires that it receive actual notice of the tax resale, the notice sent by certified

mail that was returned unclaimed was constitutionally deficient, and actual notice to the record owner by certified mail was not met. It asserts the resale deed is void.

¶ 10 In its answer, Davison Trust admits in part and disputes in part Brockhaus Trust's uncontroverted facts numbered 1 through 4. It admits Arthur J. Brockhaus placed Property in trust and that when he passed away, Don Brockhaus was named successor trustee by the memorandum of trust. Davison Trust states it has insufficient knowledge as to whether Don Brockhaus is acting as successor trustee of Brockhaus Trust and alleges Don Brockhaus never provided Logan County with any type of notification that he accepted the position as successor trustee.

¶ 11 Davison Trust also admits in part and disputes in part uncontroverted facts numbered 5 through 8. Davison Trust "admits that notice was mailed to Glyna Noe, that notice was not mailed to the property, and that Glyna Noe's position as Trustee or Co-Trustee of the Arthur J. Brockhaus Trust is unknown." It alleges, "If Glyna Noe is not a Trustee, then she or someone else had designated her as the person to whom notices for the Trust would be sent." It claims Treasurer complied with the statutory notice provisions when the Treasurer mailed notice to Noe because "[t]he statute does not require that the notice be received." It asserts, "Under these facts, if Ms. Noe is not a Trustee, then the publication notice should stand on it's [sic] own as Don Wayne Brockhaus, has not registered his name and address with Logan County Assessor, the Logan County Clerk and/or the Logan County Treasurer."

¶ 12 Regarding Brockhaus Trust's fact number 9, Davison Trust claims it is without sufficient information to know when Brockhaus Trust received notice of the proceeding. It denied the fact in paragraph 10 and admitted the one in paragraph 11.

¶ 13 Davison Trust filed a supplement to its response in which it attaches the affidavit of County Treasurer Sherri Longnecker. It claims the affidavit shows Don Brockhaus has not registered his name with the Logan County Assessor, Logan County Clerk,

and/or Logan County Treasurer, and the "Treasurer used due diligence in trying to ascertain the name and address, where tax notices should be sent, by having a title search conducted." Although Don Brockhaus's name appears on the memorandum of trust, his address is not listed. Because Noe's address was listed with the County Assessor's office, Treasurer sent notice to Noe. Treasurer claims Noe had actual notice of the tax sale, contacted Treasurer's office before the sale, and stated she was going to pay the taxes.[1]

¶ 14 The trial court found the tax sale was void and granted summary judgment to Don Brockhaus as Successor Trustee of the Brockhaus Trust, restoring ownership of Property to Brockhaus Trust. The court stated, "That because Don Wayne Brockhaus was the Successor Trustee of the [Brockhaus Trust] and he did not receive actual notice of the tax resale, that the tax sale was void."

¶ 15 Davison Trust appeals from this summary judgment.

## STANDARD OF REVIEW

¶ 16 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924. In reviewing a grant of summary judgment, we must view all conclusions and inferences to be drawn from the evidentiary materials in a light most favorable to the party who opposes the motion. *Id.*

¶ 17 An appeal from an order granting summary judgment is subject to *de novo* review. *Shull v. Reid*, 2011 OK 72, ¶ 3, 258 P.3d 521. "In its re-examination of the trial tribunal's legal rulings an appellate court exercises plenary, independent and nondeferential authority." *Bronson Trailers & Trucks v. Newman*, 2006 OK 46, ¶ 5, 139 P.3d 885.

---

1. The trial court in its Order granting summary judgment to Brockhaus Trust stated that "Noe denied the allegations of the County Treasurer's Affidavit."

## ANALYSIS

¶ 18 *Davison Trust* includes seven sections in its "Legal Issues to be Determined on Appeal." The primary issue on appeal, however, is whether Treasurer provided constitutionally sufficient notice of the tax sale to Brockhaus Trust. We agree with the trial court that the notice given was deficient and the tax sale and resale tax deed are void.

¶ 19 The Oklahoma Supreme Court recently addressed the notice requirements in tax resale cases in *Crownover v. Keel,* 2015 OK 35, 357 P.3d 470, (petition for rehearing pending; not yet released for publication). This is the issue in *Crownover:* "[W]hether an owner of real property received constitutionally sufficient notice of the sale of his property for delinquent taxes when notice was provided only by publication and certified mail that was returned undelivered." *Id.* ¶ 1. The Supreme Court held that the owner did not receive sufficient notice. *Id.*

¶ 20 After Crownover failed to pay taxes for several years on certain real property in McIntosh County, Oklahoma, McIntosh County offered the property for sale in 2010. *Id.* ¶ 3. The Court explained:

It is undisputed that the notice provisions of 68 O.S.2011 § 3106, mandating notice by mail and publication, were complied with. Notice was sent by certified mail to Crownover at the address he provided when he purchased the property in McIntosh County, and was also published in a newspaper in McIntosh County. Unbeknownst to county treasurer's office, Crownover no longer lived at the address to which notice was sent.

*Id.* ¶ 3. Crownover did not become aware of the sale of the property at the tax resale until the purchaser contacted him about a boat and trailer on the property. *Id.* ¶ 4. Crownover brought a quiet title action against the McIntosh County Treasurer and Board of County Commissioners. *Id.* ¶ 5. Crownover asserted the tax deed was void because "he did not receive notice because while the notices of delinquent taxes and of the resale were sent to the address he provided to McIntosh County when he purchased the property, Crownover no longer

lived at that address." *Id.* Crownover argued "that the County should have sent notice to the address listed on the last check he wrote for taxes on January 1, 2006." *Id.*

¶ 21 Both Crownover and McIntosh County moved for summary judgment. *Id.* ¶ 6. McIntosh County asserted "that it complied with all statutory notice requirements by: 1) mailing notice by certified mail to the address Crownover had originally provided; and 2) publishing notice of the resale in a publication in McIntosh County." *Id.* Crownover claimed that McIntosh County sent the notice "to his old address via certified mail [and it] was returned to the County treasurer marked 'Not Deliverable as Addressed Unable to Forward.'" *Id.* ¶ 7. The trial court granted summary judgment in favor of County. *Id.* The Court of Appeals affirmed the trial court's decision. *Id.* ¶ 9.

¶ 22 Title 68 O.S.2011 § 3105(A) provides:

The county treasurer shall in all cases, except those provided for in subsection B of this section, where taxes are a lien upon real property and have been unpaid for a period of three (3) years or more as of the date such taxes first became due and payable, advertise and sell such real estate for such taxes and all other delinquent taxes, special assessments and costs at the tax resale provided for in Section 3125 of this title, which shall be held on the second Monday of June each year in each county. The county treasurer shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by law made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of the taxes and special assessments.

¶ 23 The *Crownover* Court stated:

While 68 O.S.2011 § 3105 authorizes the sale of real property for delinquent taxes, the U.S. Const. amend. XIV, § 1 and Okla. Const. Art. 2, § 7 ensure that no person may be deprived of life, liberty, or property without due process of law. At a minimum, due process requires notice and a meaningful opportunity to appear and be heard. *Edwards v. City of Sallisaw,* 2014

OK 86, ¶ 19, 339 P.3d 870; *Daffin v. State ex rel. Okla. Dep't of Mines,* 2011 OK 22, ¶ 16, 251 P.3d 741.

Accordingly, constitutionally sufficient notice must be given to real property owners before the property is sold for failure to pay taxes. *Jones v. Flowers,* 547 U.S. 220, 234, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006) ("[B]efore forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking."). *See Southwestern Commercial Capital, Inc. v. Cornett Packing Co.,* 2000 OK 19, ¶ 16, 997 P.2d 849; *Luster v. Bank of Chelsea,* 1986 OK 74, ¶ 18, 730 P.2d 506. *Crownover,* 2015 OK 35, ¶¶ 14–15, 357 P.3d 470 (footnotes omitted). Title 68 O.S.2011 § 3106 addresses the notice requirements that must be met before a property may be sold for delinquent taxes.[2] It provides, in relevant part:

The county treasurer, according to the law, shall give *notice of delinquent taxes and special assessments by publication once a week for two (2) consecutive weeks at any time after April 1,* but prior to the end of September following the year the taxes were first due and payable, in some newspaper in the county to be designated by the county treasurer. Such notice shall contain a notification that all lands on which the taxes are delinquent and remain due and unpaid will be sold in accordance with Section 3105 of this title, a list of the lands to be sold, the name or names of the last record owner or owners as of the preceding December 31 or later as reflected by the records in the office of the county assessor, which records shall be updated based on real property conveyed after October 1 each year and the amount of taxes due and delinquent.... *In addition to said published notice, the county treasurer shall give notice by mailing to the record owner of said real property as of the preceding December 31 or later as reflected by the records in the office of the county assessor,* which records shall be updated based on real property conveyed after October 1 each year, a notice stating the amount of delinquent taxes owed and informing the owner that the subject real property will be sold as provided for in Section 3105 of this title if the delinquent taxes are not paid and showing the legal description of the property of the owner being sold. *Failure to receive said notice shall not invalidate said sale.*

(Emphasis added.)

¶ 24 McIntosh County asserted that it complied with the due process requirements because it complied with § 3106 by publishing notice in a newspaper located in McIntosh County and sending notice by certified mail to the address originally provided by Crownover. *Crownover,* 2015 OK 35, ¶ 17, 357 P.3d 470. The Supreme Court rejected this argument finding "compliance with the notice provisions 68 O.S.2011 § 3106 is not in and of itself sufficient if the notice provided is constitutionally deficient." *Id.* ¶ 18. The Court quoted *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950) for the proposition that:

when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.

*Crownover,* 2015 OK 35, ¶ 18, 357 P.3d 470.

¶ 25 The *Crownover* Court held, "The notice requirement of due process is not satisfied where, as here, notice sent via certified mail is returned undelivered and no further action is taken." *Id.* ¶ 19. The Court stated:

The decision of the United States Supreme Court in *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), is directly on point concerning notice re-

**2.** Brockhaus Trust in its Response to Davison Trust's petition in error argues that 68 O.S.2011 § 3127 ("Notice of Resale"), not 68 O.S.2011 § 3106 ("Notice of Sale"), applies and requires

that "the June Tax Resale Notice must be mailed by certified mail at least 30 days before the sale." Its arguments regarding inadequate notice and the resulting deed being void remain the same.

quired to satisfy the requirements of due process prior to sale of real property for delinquent taxation. In *Jones,* under similar facts to this cause, the Supreme Court of the United States determined that "when mailed notice of a tax sale is returned unclaimed, *the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so."* *Jones,* 547 U.S. at 225 [126 S.Ct. 1708]. The tax sale in *Jones* occurred after the State published notice in a newspaper and attempted to notify the property owner—who no longer lived on the property—by certified mail twice, with the notice returned unclaimed both times. *Jones,* 547 U.S. at 223–224 [126 S.Ct. 1708]. *Id.* (emphasis added). The Court noted that the *Jones* Court also concluded "that the property owner's failure to keep his address updated, which was required by statute, **did not** result in the owner somehow forfeiting his right to constitutionally sufficient notice." *Id.* ¶ 20. The Court also recognized:

While the *Jones* Court determined that the State should have taken other reasonable measures to reach the property owner, it stopped short of requiring the state to search elsewhere for an address for the property owner, noting that an open-ended search for a new address would unduly burden the State. 547 U.S. at 236 [126 S.Ct. 1708]. Rather, the Court suggested reasonable measures such as posting notice on the property door, or even sending notice by regular mail, which could at least have resulted in its delivery and presence on the property. *Jones,* 547 U.S. at 235 [126 S.Ct. 1708]. The Court noted that it was not its responsibility to redraft the State's notice statute, but it was sufficient that the Court was confident additional reasonable steps were available for Arkansas to employ before taking the property. *Jones,* 547 U.S. at 238 [126 S.Ct. 1708].

*Id.* ¶ 21.

¶ 26 The *Crownover* Court held:

It is undisputed that Crownover failed to timely pay taxes on the subject property. It is also undisputed that the County fulfilled the notice requirements of 68 O.S.

2011 § 3106 by publishing notice and by sending notice via certified mail to the address it had been given for Crownover. The County asserts this was sufficient notice, regardless of whether the notice was actually received by Crownover, and further cites Crownover's own need to notify them of an address change and his presumed knowledge that he would owe taxes.

However, the record contains undisputed evidence that the notice to Crownover sent via certified mail was never received by him, was in fact returned to the County marked as "not deliverable as addressed unable to forward." The Court of Civil Appeals erred by declaring that this envelope was mentioned but not actually attached to the record. *Pursuant to Jones, when confronted with the knowledge that its notice via certified mail was not delivered and therefore not seen by Crownover, the County was required to attempt some other reasonable method of supplying notice to Crownover.* 547 U.S. at 225 [126 S.Ct. 1708]. The [p]rior decisions of this Court also indicate that simple compliance with the notice statute is not always enough to satisfy the requirements of due process. *See Garcia,* 2008 OK 90, ¶ 15 [195 P.3d 1269]; *Ziegler,* 1989 OK 113, ¶ 6 [780 P.2d 703].

The County could have taken other reasonable steps to attempt to provide Crownover with notice, without necessarily being obligated to conduct a lengthy hunt for a correct address. *See Jones,* 547 U.S. at 235–36 [126 S.Ct. 1708]. Like the Supreme Court of the United States, we do not think that a person who actually desired to inform a real property owner of an impending tax sale of the real property would do nothing when a certified letter sent to the owner is returned unclaimed. *Jones,* 547 U.S. at 229 [126 S.Ct. 1708]. *The return of the certified notice undelivered was a red flag that should have tipped off the County it needed to follow up.* *Ziegler,* 1989 OK 113, ¶ 6 [780 P.2d 703]. The County's failure to make any further effort resulted in Crownover being

denied constitutionally sufficient notice of the eminent [3] sale of his property.

The *Jones* decision also deals succinctly, from the standpoint of U.S. Const. amend. XIV, § 1, with the County's claims concerning Crownover's obligations. Crownover's failure to timely pay taxes and his failure to provide an updated address to the County did not relieve it of its obligation to provide him with constitutionally adequate notice prior to selling his property. *Jones*, 547 U.S. at 229, 232 [126 S.Ct. 1708]. We agree.

*Id.* ¶¶ 27–30 (emphasis added.)

¶ 27 Here, the certified mail, sent to a person unconnected to Property, was also returned unclaimed. Treasurer and Davison Trust admitted notice was not mailed to Property. Based on the reasoning in *Crownover*, which relied heavily on the United States Supreme Court's decision in *Jones*, when Logan County learned that its certified mail notice was not delivered to Brockhaus Trust but returned unclaimed, and was therefore not seen by the Trustee, Logan County was then "required to attempt some other reasonable method of supplying notice to [Brockhaus Trust]." *Id.* ¶ 28. Because Logan County did not take any other reasonable steps to provide notice, Brockhaus Trust was "denied constitutionally sufficient notice of the [im]minent sale of [its] property." *Id.* ¶ 29. The subsequent sale and resulting tax deed based on this inadequate notice are void.

---

3. We believe this is meant to be "imminent."·

---

## CONCLUSION

¶ 28 Based on the undisputed facts presented in the summary judgment record, it is clear Brockhaus Trust was not provided with constitutionally adequate notice before Logan County sold Property for delinquent taxes. *See id.* ¶ 31. The trial court was correct in granting summary judgment in favor of Brockhaus Trust. The trial court's decision is affirmed.

¶ 29 **AFFIRMED.**

GOODMAN,· V.C.J., and FISCHER, P.J., concur.